Renee O'CALLAGHAN, Petitioner and Appellee,

v.

L.B., Respondent and Appellant.

In the Interest of L.B.

Civ. No. 890297.

Supreme Court of North Dakota.

Oct. 25, 1989.

Bruce B. Haskell, Asst. State's Atty., Bismarck, for petitioner and appellee.

Anne E. Summers of Dyer & Summers, Bismarck, for respondent and appellant.

VANDE WALLE, Justice.

L.B. appealed from an order of the County Court of Burleigh County committing him to the State Hospital for 90 days to receive treatment for mental illness. We reverse and remand for further proceedings.

Section 25–03.1–07, N.D.C.C., authorizes a person to be involuntarily admitted to the State Hospital only if it is determined that he is a person requiring treatment as defined under Section 25–03.1–02(10), N.D. C.C.:[1]

"10. 'Person requiring treatment' means a person who is mentally ill or chemically dependent, and there is a reasonable expectation that if the person is not treated there exists a serious

risk of harm to that person, others, or property. 'Serious risk of harm' means a substantial likelihood of:

"a. Suicide as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential;

"b. Killing or inflicting serious bodily harm on another person or inflicting significant property damage, as manifested by acts or threats;

"c. Substantial deterioration in physical health, or substantial injury, disease, or death based upon recent poor self-control or judgment in providing one's shelter, nutrition, or personal care; or

"d. Substantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property, based upon acts, threats, or patterns in the person's treatment history, current condition, and other relevant factors."

The petitioner for an involuntary admission must prove by clear and convincing evidence that the respondent is a person requiring treatment. Section 25–03.1–19, N.D.C.C.; *In the Interest of U.A.M.*, 446 N.W.2d 23 (N.D.1989).

In this case Renee O'Callaghan, a partial care supervisor at West Central Human Service Center, filed a petition to have L.B. involuntarily admitted for treatment. O'Callaghan testified that L.B. is one of her clients at the center. She testified that he was "doing some drinking," "appears to be delusional," and has made threats that he intended to kill a neighbor. O'Callaghan also testified that she was aware that L.B. had previously been incarcerated for manslaughter and that she feared he would follow through with his threats to kill the neighbor.

Dr. William Pryatel, a psychiatrist, testified that L.B. is a mentally ill person suffering from delusions, whose diagnosis is "schizophrenia, paranoid type." The doctor also testified that L.B. has a history of

---

**1.** The definition of a person requiring treatment was substantially amended by the 1989 Legislative Assembly; subdivision d. of subsection 10 of Section 25–03.1–02, N.D.C.C., was added to the definition by the 1989 N.D.Laws, Ch. 149, § 3.

anti-social behavior and was incarcerated for manslaughter. In his written Report of Examination, Dr. Pryatel concluded that as a result of L.B.'s mental illness there exists a serious risk that L.B. will cause significant property damage or inflict serious bodily harm on another person.

■ After considering the foregoing evidence the trial court concluded that L.B. was a person requiring treatment under Chapter 25–03.1, N.D.C.C. On appeal L.B. asserts that there is not clear and convincing evidence to support the trial court's finding in this regard. In our opinion there is substantial unrefuted evidence, constituting clear and convincing evidence, that L.B. is a mentally ill person who poses a serious risk of harm to others and is in need of treatment. Accordingly, we affirm this finding by the trial court.

■ Our review does not end here, however. Section 25–03.1–21(1), N.D.C.C., imposes duties upon the State Hospital and the trial court which are relevant to this case:

"Before making its decision in an involuntary treatment hearing, the court shall review a report assessing the availability and appropriateness for the respondent of treatment programs other than hospitalization which has been prepared and submitted by the state hospital or treatment facility. If the court finds that a treatment program other than hospitalization is adequate to meet the respondent's treatment needs and is sufficient to prevent harm or injuries which the individual may inflict upon himself or others, the court shall order the respondent to receive whatever treatment other than hospitalization is appropriate for a period of ninety days."

This section requires the State Hospital to prepare and submit to the court a report assessing the availability and appropriateness of alternative treatment programs other than involuntary hospitalization. It also imposes a duty upon the court to review such a report prior to making its decision in involuntary treatment proceedings. L.B. asserts on appeal that the State

Hospital and the court have not complied with this provision. We agree.

The only written report by a representative of the State Hospital is the Report of Examination filed by Dr. Pryatel. This is a "fill in the blank" form report which, in this case, does not include an assessment of the availability and appropriateness of alternative treatment programs, but rather contains a cursory statement that "[a]lternative treatment is not in the best interest of the Respondent or others ..." The report form states: "A list of forms of care and treatment that may serve as alternatives to involuntary hospitalization are as follows:" In response, Dr. Pryatel merely lists the term "[j]ail." That written response appears to contradict the testimony given by Dr. Pryatel at the hearing.

Dr. Pryatel was asked at the hearing if he would recommend that L.B. be released into a structured environment other than the State Hospital, such as a halfway house or other type of facility, to which he responded:

"If there was a very structured environment where somebody could keep tabs on him and make sure that he's not drinking and not just—keep close tabs on him every day, then I would recommend that he could go there, but my understanding [is] that such a place is not available here."

Dr. Pryatel testified that he had been in the State for only two weeks prior to the hearing and that he was unaware of alternative treatment facilities which might be available to L.B. At the conclusion of the hearing the trial judge informed Dr. Pryatel that he was aware of two halfway houses in Fargo that deal with people who have chemical problems and problems with anti-social behavior. The court told Dr. Pryatel that "they should be checked out." We do not know what Dr. Pryatel's recommendation would have been had he known about and reviewed available alternative treatment programs.

■ The trial court made a finding of fact that a treatment program other than hospitalization is not adequate to meet L.B.'s treatment needs. We conclude that

the trial court's finding of inadequate alternative treatment is not supported by the evidence, because it is based upon an incomplete record which is not in compliance with Section 25–03.1–21(1), N.D.C.C. Neither Dr. Pryatel's testimony nor his written Report of Examination constitutes substantial compliance with the requirement under that provision that the State Hospital prepare and submit a report assessing the availability and appropriateness of treatment programs other than hospitalization. That provision requires the trial court to consider such a report before making its decision. We conclude, on the record before us, that no complying report was submitted or considered by the trial court.

We reverse the order of involuntary commitment and remand with directions that the trial court forthwith require a report assessing the availability and appropriateness of alternative treatment programs for L.B. other than hospitalization, in compliance with Section 25–03.1–21(1), and after receiving the report proceed to make a redetermination on the petition.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.