**In the Interest of R.R., Respondent and Appellant.**

**Civ. No. 910394.**

Supreme Court of North Dakota.

Jan. 9, 1992.

Cynthia Schaar–Mecklenberg of Weiss, Wright, Paulson & Merrick, Jamestown, for respondent and appellant.

Douglas L. Mattson, Ward County State's Atty., Minot.

LEVINE, Justice.

This is an expedited appeal from an order committing R.R. to the North Dakota State Hospital for ninety days to treat his mental illness. We affirm.

In October, a hospital emergency room physician petitioned for the involuntary commitment of R.R. who had come to the emergency room where he was physically and verbally abusive to staff. R.R. also threatened to kill himself and others. A temporary treatment order was issued under which R.R. was hospitalized at the State Hospital for fourteen days. Before the end of that hospitalization, a State Hospital doctor petitioned for R.R.'s involuntary commitment. After a treatment hearing, the county court ordered R.R. to be involuntarily committed to the State Hospital for a period of ninety days. R.R. has appealed from that order.

On appeal, R.R. acknowledges that he is mentally ill as defined by NDCC § 25–03.1–02(9) and that he requires treatment under NDCC § 25–03.1–02(10). He argues, however, that the form used to assess the availability and appropriateness of alternate treatment was incomplete and conclusory and therefore contrary to statute. He also contends that there was insufficient evidence to support the trial court's determination that alternative treatment to hospitalization was not appropriate.

Section 25–03.1–21(1), NDCC, requires that:

"Before making its decision in an involuntary treatment hearing, the court shall review a report assessing the availability and appropriateness for the respondent of treatment programs other than hospitalization which has been prepared and submitted by the state hospital or treatment facility...."

This section requires the State Hospital to prepare and submit to the court a report evaluating both the availability and the appropriateness of alternate treatment other than involuntary hospitalization. Doctor Rodolfo Campos, a treating psychiatrist, submitted the form and indicated that there were two alternative treatment programs for R.R.: North Central Human Service Center and Ward County Social Services, both located in Minot, North Dakota. The report says that these two programs are "unavailable" because "[t]he services available at NCSHC (*sic*) would not be of any benefit to [R.R.] until he becomes more stable and less labile. His lack of insight and extreme anger would be a deterrent to his treatment." The report states that alternative treatment programs would not be sufficient to meet R.R.'s needs because he "requires close supervision at this time due to his labile mood, tendency to become violent and lack of insight into his illness."

The report also indicates that these alternative treatment programs would not prevent danger to self or to others because R.R. "has become aggressive and violent while at NDSH. He is not compliant with medication while out in the community and therefore becomes very ill." The report, however, says that these alternative treatment programs would be available upon R.R.'s discharge from the State Hospital.

On its face, this report indicates two available alternatives. It analyzes why the alternatives are not appropriate for R.R. In *O'Callaghan v. L.B.*, 447 N.W.2d 326, 328 (N.D.1989), we had before us a very different kind of report. It neither identified nor evaluated alternative treatment programs. Instead, it merely concluded summarily that alternative treatment was not in respondent's "best interest." Indeed, the only alternative to hospitalization was "jail." Of course, we deemed that report wholly inadequate and unsalvageable by subsequent testimony presented at the treatment hearing. In contrast, the report in this case fulfills the requirements of NDCC § 25–03.1–21(1). It adequately assesses the availability of treatment programs other than hospitalization and weighs their appropriateness. It explains its conclusions and its rejection of community-based treatment. It provides the basis for its conclusion that there are presently no appropriate alternative programs. We conclude that the report complies with both the letter and the spirit of NDCC § 25–03.1–21(1).

R.R. also attacks the sufficiency of the evidence to support the trial court's determination that alternative treatment is not appropriate at this time for R.R.

■ In making a decision that alternative treatment is not adequate or that hospitalization is the least restrictive alternative, a trial court must have clear and convincing evidence. *Kottke v. U.A.M.*, 446 N.W.2d 23 (N.D.1989). "A majority of this court has held that the trial court's determination of whether or not there is clear and convincing evidence that a treatment program other than hospitalization is inadequate is a finding of fact which will not be set aside on appeal unless it is clearly erroneous under Rule 52(a), N.D.R.Civ.P." (Citation omitted). *Kottke*, 446 N.W.2d at 27–28.

■ In the present case, there was sufficient evidence for the county court to determine by clear and convincing evidence that the least restrictive alternative for R.R.'s treatment was hospitalization at the North Dakota State Hospital for a period of ninety days. The report assessing alternate treatment, as we have already outlined, provides evidence that R.R. lacked insight, had extreme anger, required close supervision, experienced labile moods, had a tendency toward violence and aggressiveness. There is also a report of examination which highlights R.R.'s continuing paranoia, emotional lability associated with anger, and his inability to listen to reason. At the treatment hearing, there was further evidence that alternative out-patient

treatment would be inadequate. Dr. Johnson, another treating psychiatrist, indicated that R.R. was paranoiac, violent and antagonistic. Hospital employees testified about R.R.'s explosiveness and violence. We conclude that the alternative treatment report, the examination report and Dr. David Johnson's testimony, supplemented by employee testimony, provided the county court with clear and convincing evidence to find that a treatment program other than hospitalization was inadequate for R.R. and that alternative treatment would not prevent harm to others as demonstrated by past acts and threats.

But R.R. argues that because he testified that he would be willing to participate in a medication monitoring program where he could report daily to the Human Service Center to receive medication, it was wrong for the trial court to totally ignore this proposed alternative mode of treatment.

The weight to be given R.R.'s testimony is, of course, a matter exclusively within the fact finder's domain. Nonetheless, it would better serve the appearance of propriety had the trial court directly addressed the proposed monitoring plan. It did not. But it is clear from the court's findings that it did consider R.R.'s proposal: "The respondent testified that he can be out of the hospital and get his treatment at the Human Service Center." However, the court ultimately concluded that "there is a substantial likelihood of substantial harm to others, as demonstrated by past acts and threats." The court thus rejected R.R.'s proposed alternative treatment program because of R.R.'s past conduct and threats.

Affirmed.

ERICKSTAD, C.J., VERNON R. PEDERSON, Surrogate Judge, and VANDE WALLE and MESCHKE, JJ., concur.

VERNON R. PEDERSON, Surrogate Judge, sitting with the Court due to the resignation of the Honorable H.F. Gierke III.