In the Interest of J.S.

Robert N. WATERS, MD, Medical Director, North Dakota State Hospital, Petitioner and Appellee,

v.

J.S., Respondent and Appellant.

Civil No. 960043.

Supreme Court of North Dakota.

March 15, 1996.

Gilje & Dalsted, Jamestown, for petitioner and appellee; Charles J. Gilje, on brief; argued by Kenneth L. Dalsted.

Paulson and Merrick, Jamestown, for respondent and appellant; argued by Thomas E. Merrick.

MESCHKE, Justice.

J.S. appeals from orders denying his continuance motion, and continuing his treatment at the North Dakota State Hospital for another year. We affirm.

J.S. has been here before, often. *See In Interest of J.S.* (*J.S. III*), 530 N.W.2d 331 (N.D.1995); *In Interest of J.S.* (*J.S. II*), 528 N.W.2d 367 (N.D.1995); *In Interest of J.S.* (*J.S. I*), 499 N.W.2d 604 (N.D.1993). His background has been reported in our previous decisions, and will be repeated here only as necessary to resolve this appeal.

J.S. has been a patient at the Hospital since 1989. On April 13, 1995, we affirmed an order continuing his treatment at the Hospital until February 15, 1996, with directions for a supplemental hearing on remand to cure the improper ejectment of J.S. from a previous hearing. *J.S. III*, 530 N.W.2d at 336. After the supplemental hearing, the trial court reaffirmed continued treatment for J.S. until February 15, 1996.

On January 12, 1996, the Hospital petitioned for an order to extend J.S.'s treatment for another year. *See* NDCC 25–03.1–31(1). The court immediately scheduled a hearing for January 24, 1996. *See* NDCC 25–03.1–12. The petition and attached supporting reports were properly served on J.S. and on his legal guardian. In a January 15 letter to the court, the guardian expressed her support for the petition, along with her opinion that J.S. "is in need of continuing treatment as he has no insight into his disabilities."

On the day before the hearing, January 23, J.S. moved for a continuance, alleging that the petition was insufficient under NDCC 25–03.1–23, and that it violated due process because it failed to "apprise [him] of the issues to be determined at the hearing." The trial court denied the continuance. After the hearing, the court ordered J.S.'s treatment be continued until January 24, 1997. Under NDCC 25–03.1–29, J.S. brings an expedited appeal.

J.S. argues that the trial court abused its discretion by denying his continuance motion. He asserts that he only had twelve days to prepare for the hearing, that the hearing could still have been held before the last treatment order expired on February 15, and that a continuance would not have prejudiced the Hospital. Thus, J.S. argues that "under the circumstances of this mental health petition, 'good cause' for a continuance existed and it was an abuse of discretion for the court not to grant the continuance." We disagree.

"Motions for continuance ... will be granted only for good cause shown...." NDROC 6.1(b). We will not reverse a trial court's decision to deny a continuance absent an abuse of discretion. *State v. Waters*, 542 N.W.2d 742, 744 (N.D.1996) (citing *State v. Ash*, 526 N.W.2d 473 (N.D.1995)). As we explained in *Waters* at 745, "a trial court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably."

J.S.'s continuance motion only alleged that the petition was statutorily and constitutionally deficient. This record indicates that J.S. requested a continuance merely to give the Hospital additional time to prepare a more specific petition. In response, the court

found that the petition complied with NDCC 25–03.1–23, and that the petition and attached reports gave J.S. enough notice about the issues for the hearing to satisfy due process. Because we agree with that ruling, we conclude the trial court reasonably ruled against J.S. on the only two issues raised by his motion, and did not abuse its discretion in denying the continuance.

J.S. argues that the petition violated due process because it failed to explicitly apprise him of the issues to be determined at the hearing. We disagree.

A petition by the Hospital to extend a continuing-treatment order must comply with NDCC 25–03.1–23. NDCC 25–03.1–31(1). Section 25–03.1–23 directs:

> A petition for an order authorizing continuing treatment must contain a statement setting forth the reasons for the determination that the patient continues to be a person requiring treatment; a statement describing the treatment program provided to the patient and the results of that treatment; and a clinical estimate as to how long further treatment will be required. The petition must be accompanied by a certificate executed by a physician, psychiatrist, or psychologist.

Here, the Hospital used a pre-printed petition form with separate sections for each statement directed by NDCC 25–03.1–23. The Hospital adapted the form to J.S.'s case by adding typewritten comments in each section.

■ After reviewing this petition, we agree that it could have contained more detailed statements. However, a petition to extend a continuing-treatment order does not have to summarize all of the evidence the petitioner intends to introduce at the hearing. While this one seems unnecessarily sparse, we believe it fairly complied with the basic statutory requirements for a petition.

■ In our opinion, the petition and attached reports sufficiently apprised J.S. of the issues for determination at the hearing. *See In Interest of Nyflot,* 340 N.W.2d 178, 184 (N.D.1983). Before a court can order the extension of a continuing-treatment order, it must find that the patient continues to be a "person requiring treatment," as defined in NDCC 25–03.1–02(11). *J.S. I,* 499 N.W.2d at 605. To make this finding, a two-part analysis is required: "(1) the court must find that the [patient] is mentally ill, and (2) the court must find that there is a reasonable expectation that, if not treated, there exists a serious risk of harm to the [patient], others, or property." *In Interest of K.J.L.,* 541 N.W.2d 698, 700 (N.D.1996). If the court concludes that the patient continues to be a "person requiring treatment," it must further find that "alternative treatment is not adequate and that hospitalization is the least restrictive alternative." *J.S. I,* 499 N.W.2d at 606; *see also In Interest of J.A.D.,* 492 N.W.2d 82, 86 (N.D.1992). Thus, these were the relevant issues for the January 24 hearing.

A "REPORT OF EXAMINATION," completed by Dr. Leonardo Arevalo and attached to the petition, includes pre-printed sections tracking the statutory definition of a "person requiring treatment" in NDCC 25–03.1–02(11). Dr. Arevalo completed those sections by placing an "x" next to the statutory language that he believed applied to J.S. By tracking the statutory definition, this report notified J.S. that his continued condition as a "person requiring treatment" would be determined at the hearing.

Dr. Arevalo also completed and attached a "REPORT ASSESSING AVAILABILITY AND APPROPRIATENESS OF ALTERNATE TREATMENT." *See* NDCC 25–03.1–21(1). In the pre-printed section for listing possible alternatives to hospitalization, Dr. Arevalo wrote: "None." The report also explained that alternative treatment programs are unavailable because J.S. "denies that he is mentally ill or that he needs any medication," that J.S. "is very dangerous and is potentially violent toward others when he is off" medication, and that J.S. "plainly states that he would not take *any* [medication] if he was out of the hospital." This report, along with other statements in the petition and supporting documents, notified J.S. that the unavailability of less restrictive, alternative-treatment programs would be resolved at the hearing. When read together with the supporting reports, the Hospital's petition more than ade-

quately notified J.S. of the relevant inquiries to be made at the hearing.

J.S. also argues that Dr. Arevalo was required to list potential alternative-treatment programs, and could not simply write "[n]one." He cites *O'Callaghan v. L.B.*, 447 N.W.2d 326 (N.D.1989). In that case, a specific report on the availability of alternative-treatment programs was not attached to the petition. Rather, the "REPORT OF EXAMINATION" merely stated that "[a]lternative treatment is not in the best interest of the Respondent or others," and only listed the word "[j]ail" as a possible alternative to hospitalization. *Id.* at 328. However, at the subsequent involuntary treatment hearing, the reporting doctor contradicted these statements by implying that alternative programs were possible. *Id.* We reversed, *id.* at 329, finding that the report and contradictory testimony did not substantially comply with the NDCC 25–03.1–21(1) directive for "a report assessing the availability and appropriateness for the respondent of treatment programs other than hospitalization . . . ."

In contrast, this petition and supporting documents sufficiently explain the "conclusion that there are presently no appropriate alternative programs" for J.S. *In Interest of R.R.*, 479 N.W.2d 138, 139 (N.D.1992). Besides the statements in the specific report assessing the availability of alternative treatment, the "REPORT OF EXAMINATION" added:

> [J.S.] continues to refuse to admit that he is mentally ill and will not take medication if it is not court ordered. He has a very serious physical aggressive behavior, when not properly treated while in the community, and this makes him a very difficult patient to get a placement for. He continues to need a structured and supervised arrangement.

Also, unlike testimony in *O'Callaghan*, Dr. Arevalo's testimony at the hearing supported, rather than contradicted, his conclusions in the petition and supporting reports. He also testified that the Hospital was continuously searching for an alternative program with enough structure and supervision for J.S., but that no such program currently existed in North Dakota.

In some cases, a reporting doctor may reasonably conclude that less restrictive alternatives to hospitalization simply do not exist. *See In Interest of L.B.*, 452 N.W.2d 75, 78 (N.D.1990) (report complied with requirements of NDCC 25–03.1–21(1) and *O'Callaghan* despite not listing "alternative treatment options"). Based on the record here, we believe this is such a case.

Finally, J.S. argues the Hospital failed to prove under NDCC 25–03.1–02(11) that he is still a "person requiring treatment." Although he is not challenging the court's finding that he is still "mentally ill" with chronic schizophrenia, J.S. disputes the court's finding that there is a "substantial likelihood of harm to himself or others as without current treatment, [and that] a substantial deterioration in mental health would predictably result in dangerousness to [himself] and others based upon acts and patterns in his treatment history." Emphasizing that "it has been more than a year since [he] exhibited any physical violence," J.S. argues that "because of the ameliorating effects of the medication, dangerousness is no longer predictable," and that the "court should not look at past acts done without the moderating effects of medicine to predict the future." We disagree.

■ The burden of proof in a continuing treatment hearing is "the same as in an involuntary treatment hearing." NDCC 25–03.1–31(1). Thus, the petitioner must prove by clear and convincing evidence that the patient continues to be "a person requiring treatment." *K.J.L.*, 541 N.W.2d at 700. We review a finding that a patient continues to be a "person requiring treatment" under a more probing clearly-erroneous standard. *J.S. II*, 528 N.W.2d at 368; *see also In Interest of R.N.*, 513 N.W.2d 370, 371 (N.D. 1994). Here, clear and convincing evidence supported the trial court's finding.

At the hearing, Dr. Arevalo agreed that J.S. had not recently been physically aggressive, but he testified that J.S. remained verbally aggressive and threatening. Dr. Arevalo attributed the reduction in J.S.'s physical aggressiveness to medication, and to the Hospital staff's ability to avoid J.S.'s violent "spells" by minimizing discussions

 

about his mental illness and treatment. Yet, from J.S.'s continued aggressiveness and poor judgment, his statements that he would not take medication if he was not in the Hospital, and because he hit a doctor and another patient when his medication was previously reduced, Dr. Arevalo concluded that J.S. would be dangerous to himself and others without his current treatment.

 A court can use what has happened in the past as "prognostic" evidence to help predict future conduct. *R.N.* at 372. Moreover, J.S. did not testify at the hearing, and presented no evidence to refute Dr. Arevalo's conclusions. As we explained in *J.S. III*, 530 N.W.2d at 333–34, while J.S.'s past violent behavior, by itself, cannot condemn him "to remain hospitalized for life," it "was not clearly erroneous for the trial court to order continuing treatment for J.S. based on his past record of violent assaultive behavior, coupled with the current and uncontroverted expert opinion that his behavior would revert if the prescribed treatment did not continue."

We affirm the order continuing J.S.'s treatment for another year.

VANDE WALLE, C.J., and
SANDSTROM and NEUMANN, JJ., concur.

Because of a vacancy on the Court at the time of hearing and decision, this case was decided by four Justices.