**SOURIS RIVER TELEPHONE MUTUAL AID COOPERATIVE, Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU,**
Appellee,

and

**Tracy K. Schettler, Respondent.**

**Civ. No. 900404.**

Supreme Court of North Dakota.

June 3, 1991.

Jan M. Sebby, Pringle & Herigstad, Minot, for appellant.

Dean J. Haas, Asst. Atty. Gen., North Dakota Workers Compensation Bureau, Bismarck, for appellee.

LEVINE, Justice.

Souris River Telephone Mutual Aid Cooperative [Souris River] appeals from a district court judgment affirming the Workers Compensation Bureau's denial of Tracy K. Schettler's claim for death benefits as the surviving spouse of Thomas A. Schettler, who was killed in a work-related accident in Sioux Falls, South Dakota, while employed by Souris River. We affirm the judgment of the district court.

Souris River is headquartered in Minot and provides telephone service in northwestern North Dakota. Souris River has no offices outside of North Dakota and all of Souris River's employees are based in Minot. Souris River is also engaged in the satellite and cable TV business. Thomas Schettler was employed by Souris River as a technician in this division.

In August 1989, Souris River entered into a contract to install satellite dishes for Hughes Network Systems [Hughes]. The contract was signed by a representative of Souris River on August 9, 1989, and by a representative of Hughes on August 14, 1989. Under the contract, particular installations would be directed by work orders to be issued from time to time by Hughes and it was expected that approximately 10 percent of the installations would occur in South Dakota.

On August 15, 1989, Souris River filed its Employer Report with the Bureau for

the payroll period of August 1988 through July 1989. In response to the question on the payroll report form, "Will you have employees working in states other than North Dakota?", the office manager for Souris River checked the "no" box. According to the office manager, he had no knowledge when he completed the report that Souris River employees would be working out of state. Souris River paid its workers compensation premium for the year August 1989 through July 1990 based on this report. Souris River did not inform the Bureau when it became aware that employees would be working out of state.

In September 1989, Hughes issued a work order for installation of a satellite dish at a commercial location in Sioux Falls. The work order was assigned to Schettler along with a second work order for an installation in Aberdeen, South Dakota, which was to be completed upon conclusion of the Sioux Falls installation. A building permit for the first installation was issued by the city of Sioux Falls. A site survey was also completed prior to the installation. The Sioux Falls installation was valued at $1,000 by Souris River and was expected to take approximately two days, including travel time.

On November 14, 1989, while installing the satellite dish on the roof of a six-story building in Sioux Falls, Schettler fell to his death. According to Souris River, the Sioux Falls installation was the only time Schettler had worked outside of North Dakota as a Souris River employee. Approximately 12 hours, including driving time, of Schettler's total of 1,613 work hours in 1989 were spent on the Sioux Falls installation. During 1989, 56 of Souris River's 186,964 total employee work-hours were spent out of state.

After the accident, Souris River contacted the Bureau and applied for extraterritorial workers compensation coverage in South Dakota. South Dakota approved and returned the extraterritorial agreement covering Souris River on November 19, 1989.

Tracy Schettler, as the surviving spouse, thereafter filed an application for death benefits with the Bureau. The Bureau dismissed the claim in December 1989, on the ground that Schettler's injury occurred at an "identifiable out-of-state jobsite" under § 65–08–01(2), N.D.C.C. Tracy Schettler accepted the denial of benefits and sought no further recourse through the Bureau. Souris River petitioned for a hearing, after which the Bureau affirmed its earlier order. Souris River appealed to the district court, which affirmed the Bureau's decision.

Souris River now appeals to this court asserting that Schettler is entitled to workers compensation benefits under our extraterritorial coverage laws.

■ Section 28–32–19, N.D.C.C., governs the scope of judicial review of the Bureau's decision in both the district court and this court. *Wendt v. North Dakota Workers Compensation Bureau,* 467 N.W.2d 720, 724 (N.D.1991). We must affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not sustained by the findings of fact, its decision is not supported by its conclusions of law or its decision is not in accordance with the law. *Jones v. Workers Compensation Bureau,* 461 N.W.2d 273, 274 (N.D.1990).

If there is no contract for extraterritorial coverage between an employer and the Bureau, the Bureau's responsibility for compensating injuries occurring outside of North Dakota is limited by the terms of § 65–08–01, N.D.C.C.[1]:

"*65–08–01. Extraterritorial coverage, when and how furnished.*

"1. Compensation may be paid on account of injuries occurring outside this state or because of death due to an injury occurring outside of this state only when:

\* \* \* \* \* \*

"b. A North Dakota employee sustains an injury beyond the borders of this state in a service which is inciden-

---

1. House Bill No. 1370, enacted as an emergency measure by the 1991 Legislative Assembly, completely revised § 65–08–01, N.D.C.C., and repealed § 65–08–02, N.D.C.C.

tal to and is referable to the principal employment, the situs of which is within North Dakota.

\* \* \* \* \* \*

"2. If the injury is sustained at an identifiable out-of-state jobsite, the services rendered and injury sustained may not be deemed to be incidental and referable to the North Dakota employment, even if the contractual relationship between employer and employee was entered in North Dakota."

Thus, subsection (1)(b) of the statute allows compensation for injuries occurring outside this state if the employee is engaged in a service which is "incidental to and is referable to the principal employment, the situs of which is within North Dakota." However, subsection 2 of the statute modifies subsection (1)(b) by declaring that services rendered are not incidental and referable to the North Dakota employment, if the injury is sustained at an "identifiable out-of-state jobsite." The meaning of this phrase is the focus of the parties' dispute in this case.

An "identifiable out-of-state jobsite" is not defined by statute. Nor have we interpreted the provision in the past. The Bureau essentially asserts that an "identifiable out-of-state jobsite" should be construed to mean any locatable, physical situs where work is performed, regardless of the duration of the employment or other factors. According to the Bureau, a service is incidental and referable to principal employment, thereby affording extraterritorial coverage under § 65–08–01(1)(b), only when an employee is injured in transit to or from the physical jobsite. Souris River asserts that an "identifiable out-of-state jobsite" should be construed to mean only a jobsite where an employer or employee has a "substantial continuous presence." Under Souris River's totality-of-the-circumstances approach, there should be consideration of additional factors, such as the duration of the particular job and its relation to the employer's business as a whole.

■ A statute is ambiguous if it is susceptible to differing but rational meanings. *State v. Silkman,* 317 N.W.2d 124, 125 (N.D.1982). Because this provision is susceptible to differing meanings and because the root of the term "identifiable," which modifies "out-of-state jobsite," can relate to "the origin, nature, or definitive characteristics" of the thing described [The American Heritage Dictionary, at p. 639 (2nd College Ed.1985)], we conclude that the phrase is ambiguous. Resort to extrinsic aids, such as legislative history, is therefore appropriate in interpreting the provision. *E.g., Blackburn, Nickels & Smith, Inc. v. National Farmers Union,* 452 N.W.2d 319, 322 (N.D.1990).

The "identifiable out-of-state jobsite" provision was added to § 65–08–01 in 1989 at the request of the Bureau. *See* 1989 N.D.Sess.Laws Ch. 766, § 13. It is obvious from the legislative history that the purpose of the amendment was to prevent employers from taking advantage of North Dakota's favorable workers compensation rates while having their employees work in another state without obtaining and paying premiums for out-of-state coverage. A Bureau representative testified that the purpose of the amendment was, in part, to counter the "liberal" attitude of courts in allowing a "claimant to elect coverage in whatever state they desire." House Committee on Industry, Business and Labor, Minutes on Senate Bill 2237, March 7, 1989, at p. 2. He further testified that when "an employer sets up shop in another state to conduct a specific job, it is policy to report the payroll to where you have the job site" and that the employer "should have coverage in the out of state state." *Id.* The Bureau representative also outlined another aspect of the problem the Bureau was facing:

"Due to the significant difference in rates between North Dakota and Minnesota, we've seen an increase in labor leasing companies which organize themselves as legal entities in North Dakota, hire all of the former employees of Minnesota companies, and lease the services back to the former employer. Under general case-law, if the employer signed contracts with these workers in North Dakota, the bureau will be in ef-

fect covering Minnesota employees who do work on various job sites. The amendment provides that if the injury is sustained at an identifiable out-of-state job site, the injury is not incidental to North Dakota employment. Employers who do substantial work in North Dakota and Minnesota should have coverage in both states." Written Testimony of Dean J. Haas, Assistant Attorney General, Senate Bill 2237, at p. 8.

In adopting the amendment to § 65–08–01, the Legislature clearly intended to limit the Bureau's liability for uncontracted coverage of employees who are injured outside of North Dakota.

■ It is true that the Workers Compensation Act is to be liberally construed with the view of extending its benefit provisions to all who can fairly be brought within them. *E.g., Syverson v. N.D. Workmen's Compensation Bureau,* 406 N.W.2d 688, 690 (N.D.1987). Yet, we are not free to ignore the terms or the intent of provisions within the Act. *Kipp v. Jalbert,* 110 N.W.2d 825, 828 (N.D.1961); *Breitwieser v. State,* 62 N.W.2d 900, 903 (N.D.1954). If we were to interpret the phrase, "identifiable out-of-state jobsite," as Souris River suggests, the 1989 legislation will have accomplished nothing. The Legislature does not perform idle acts. *Koch Hydrocarbon Co. v. Board of Equalization,* 454 N.W.2d 508, 512 (N.D.1990). Factors such as the duration of a particular out-of-state job and its relation to the employer's overall business were pertinent considerations in determining whether a service is "incidental to and is referable to the principle employment" under § 65–08–01(1)(b) prior to the modifying 1989 amendment. By enacting subsection 2, the Legislature intended to limit extraterritorial coverage. In view of the Legislature's intentions, we cannot say that the Bureau's bright line interpretation of the statute is unreasonable. We conclude that the phrase "identifiable out-of-state jobsite" refers to a locatable, physical situs where work is performed.

■ In this case, Schettler was injured while installing a satellite dish on a building in Sioux Falls. We conclude that the

Bureau did not err in determining that Schettler was injured at an "identifiable out-of-state jobsite," that the service and injury were therefore not incidental and referable to North Dakota employment, and, consequently, that Schettler was not entitled to extraterritorial coverage under § 65–08–01.

■ Souris River asserts that coverage should nevertheless be provided because the Bureau has entered into an agreement with the South Dakota Industrial Commission pursuant to § 65–08–04, N.D.C.C., which provides:

"*65–08–04. Agreements between states relating to conflicts of jurisdiction.* The bureau, through the action of the director, may enter into agreements with the workers' compensation agencies of other states relating to conflicts of jurisdiction where the contract of employment is in one state and the injuries are received in the other state, or where there is a dispute as to the boundaries or jurisdiction of the states and when such agreements have been executed and made public by the respective state agencies, the rights of the employee hired in such other state and injured while temporarily employed in this state, or hired in this state and injured while temporarily employed in another state, or where the jurisdiction is otherwise uncertain, must be determined pursuant to such agreements and confined to the jurisdiction provided in such agreements. Where such an agreement exists, any provisions of this chapter which conflict with the provisions of that agreement are superseded by the provisions of that agreement."

In May 1968, the Bureau and the South Dakota Industrial Commission entered into an extraterritorial reciprocity agreement which states in part that the Bureau:

"will provide protection for any North Dakota employer under its jurisdiction, and benefits to any of his North Dakota employees who may be injured in the course of employment while working temporarily in the State of South Dakota. In the event of injury to one of these

employees, his exclusive remedy would be that provided by the Workmen's Compensation Law of the State of North Dakota."

Souris River's assertion that the agreement provides coverage without any further action on its part is incorrect. There is no claim that this agreement was not "made public" as required by § 65–08–04 and the statute specifies that the terms of the agreement control. The extraterritorial agreement between the Bureau and South Dakota provides:

"That the Workmen's Compensation Bureau of the State of North Dakota will, *upon request and on behalf of the North Dakota employer*, issue a certificate of extraterritorial coverage to the Industrial Commission of the State of South Dakota, and that the Industrial Commission of the State of South Dakota will, upon request and on behalf of the South Dakota employer, issue a certificate of extraterritorial coverage to the Workmen's Compensation Bureau of the State of North Dakota." [Emphasis added].

The agreement further provides that certificates of extraterritorial coverage "shall be issued, or canceled, at the discretion" of the respective state agencies.

An employer must therefore contact the Bureau and request extraterritorial coverage to effectuate that coverage. According to the Bureau, the employer's response to the question in the annual payroll report form asking whether any employees will be working in states other than North Dakota is one of the methods that alerts the Bureau to the need for extraterritorial coverage. If the employer indicates that employees will be working out of state, the Bureau sends forms to the employer to apply for extraterritorial coverage.

Souris River did not indicate that it would have employees working out of state when it returned the annual payroll report form in August 1989, nor did it request extraterritorial coverage when it became aware that employees would be working out of state. Souris River did not request extraterritorial coverage until after Schett-

ler's death. Extraterritorial coverage went into effect under the terms of the contract on November 19, 1989, when South Dakota approved and returned to the Bureau the extraterritorial agreement covering Souris River. There was no contractual extraterritorial coverage prior to November 19, 1989.

Accordingly, the judgment is affirmed.

ERICKSTAD, C.J., VANDE WALLE and GIERKE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of MESCHKE, J., disqualified.