**In the Interest of T.J., Respondent and Appellant.**

Civ. No. 920010.

Supreme Court of North Dakota.

March 19, 1992.

Edwin W.F. Dyer, III (argued), of Dyer & Summers, Bismarck, for respondent and appellant.

Bruce B. Haskell (argued), Asst. State's Atty., Bismarck, for appellee.

MESCHKE, Justice.

T.J. appeals from denial of his motion to dismiss an order for continuing mental-health treatment, other than hospitalization, for lack of statutory authorization. We affirm.

After earlier commitment proceedings, T.J. waived a hearing on April 10, 1991, and the Burleigh County court ordered his indefinite mental-health treatment as an outpatient through West Central Human Service Center in Bismarck. *See* NDCC 25–03.1–22(2). Before six months expired, the director of the Center filed a periodic review with the court under NDCC 25–03.1–31, reporting that T.J. continued to be mentally ill and that outpatient treatment should continue. The report said:

> [T.J.] has marginal adjustment into the community. He needs medication monitoring to assure compliance. [T.J.] is having difficulty performing simple tasks such as his bringing data to Social Services, budgeting, etc. He has had difficulties maintaining residencies. [T.J.] has been inappropriate in social settings.
>
> [T.J.] continues to have difficulties maintaining himself in the community and was evicted from apartments in the past. The behavior which caused this eviction were knocking on others' doors late at night, harassment of other clients, verbal harassment of females in his building, stealing papers, leaving garbage in hallways, and burning holes in carpet with cigarettes.

The report summarized the treatment to continue:

> We feel that [T.J.] can be maintained in the community if he has his 1. Medication monitored; 2. Weekly contact with case manager; 3. Partial care programming; 4. Psychiatric follow along as needed; 5. RIS apartment for crisis management. If he doesn't comply to the above or exacerbation of his illness occurs, hospitalization may be needed.

Notice of the review results was given to T.J. and to his appointed attorney.

■ The procedure for periodic review of continuing treatment is prescribed by statute:

> *Review of current status of continuing treatment.* Every individual subject to an order of continuing treatment has the right to regular, adequate, and prompt review of his current status as a person requiring treatment and in need of hospitalization. Six months from the date of an order of continuing treatment, and every year thereafter, the director or superintendent where an individual is hospi-

talized shall review his status as a person requiring treatment and in need of hospitalization. The results of each periodic review conducted under this chapter must be made part of the patient's record, and must be filed within five days of the review, in the form of a written report, with the court where the facility is located. Within this five-day period, the director or superintendent shall give notice of the results of the review to the patient, his attorney, and his nearest relative or guardian.

If a periodic review report concludes that the patient continues to require treatment and hospitalization, and the patient objects to either or both of those conclusions, the patient shall have the right to a hearing, an independent evaluation, and may petition the court for discharge. This petition may be presented to the court or a representative of the hospital or facility within seven days, excluding weekends and holidays, after the report is received. If the petition is presented to a representative of the hospital or facility, he shall transmit it to the court forthwith. The petition must be accompanied by a report from a physician, psychiatrist, or clinical psychologist setting forth the reasons for his or her conclusions that the patient no longer is a person requiring treatment or in need of hospitalization. If no such report accompanies the petition because the patient is indigent or is unable for reasons satisfactory to the court to procure such a report, the court shall appoint an independent expert examiner to examine the patient, and the examiner shall furnish a report to the court.

If such report concludes that the patient continues to be a person requiring treatment and in need of hospitalization, the court shall so notify the patient and shall dismiss the petition for discharge. If the conclusion is to the contrary, the court shall set a hearing date which must be within fourteen days of receipt of the examiner's report. At the hearing, the burden of proof is the same as in an involuntary treatment hearing.

NDCC 25–03.1–31 (1991). T.J.'s attorney did not seek an independent expert examination, but moved to dismiss the continuing treatment because, as he saw it, "the statute requires that a continuing treatment order be dismissed at the time of periodic review if a need for hospitalization is not found."

The trial court denied T.J.'s motion, ruling that the statute "does contemplate periodic reviews be done on [involuntary patients] under continuing treatment programs even if they are not hospitalized." Based on the unchallenged report that T.J. continued to be mentally ill and in need of outpatient treatment, the court continued the order for outpatient treatment.

After the trial court refused to reconsider, T.J. appealed, arguing that NDCC 25–03.1–31 requires a need for hospitalization to continue an indefinite order for treatment after periodic review. T.J. does not object to the conclusions of the periodic report, nor does he seek an independent expert evaluation. Thus, T.J. does not claim that he is not mentally ill or that he does not need outpatient treatment. Instead, T.J. seeks to invalidate the continuing treatment order by a judicial declaration that the court has no statutory power to continue an indefinite order for outpatient treatment after periodic review.

Strangely, stressing that the statute "is replete with references to hospitalization," the State sides with T.J. that the statute does not permit periodic review of an order for continuing outpatient treatment. Yet the State urges affirmance, not reversal, of the continuation.

The State posits that a continuing order for less restrictive treatment than hospitalization simply continues in effect without any review at all until the involuntary patient no longer needs any treatment. According to the State, the facility effecting outpatient treatment will then discharge the involuntary patient on its own initiative, or the patient can initiate legal proceedings to lift the continuing order. This puzzling position strikes us as an effort to "return to the old days," inconsistent with the current legislative intent, expressed in NDCC 25–03.1–01(2), to "[s]afeguard individual rights."

These different positions between the State and T.J. about the application of NDCC 25–03.1–31 suggest that it is "susceptible to differing but rational meanings", and that it is, therefore, ambiguous. *Souris River Tel. v. Workers Compensation Bureau,* 471 N.W.2d 465, 468 (N.D. 1991). The interpretation of a statute is a question of law that is fully reviewable by this court. *Ladish Malting Co. v. Stutsman County,* 351 N.W.2d 712 (N.D.1984). The purpose of statutory construction is to determine the intent of the Legislature. *County of Stutsman v. State Historical Society,* 371 N.W.2d 321 (N.D.1985). "[C]onsideration should be given to the ordinary sense of the statutory words, the context in which they are used, and the purpose which prompted their enactment". *Id.* at 327. When a statute is ambiguous, the canons of construction permit the use of other aids to interpretation, including the object sought to be attained by the statute, the legislative history, and the consequences of a particular construction. NDCC 1–02–39. It is basic, as NDCC 1–02–38 tells us, that the entire statute is intended to be effective, and that a just and reasonable result is intended by the Legislature.

A broad reform of the mental-health commitment laws was enacted in 1977 as a result of a study by the North Dakota Legislative Council's Committee on State and Federal Government during the 1975–1977 interim. That Committee summarized the major reforms that it recommended in Senate Bill 2164:

> The major changes in the proposed bill are threefold. First, a magistrate system using the county justice has been substituted for the use of county mental health boards. The basis of this change is the recognition of the practical difficulties of convening the boards and testimony that generally the boards have delegated their authority to the chairmen who are the county judges. Second, due process requirements have been provided specifically in the areas of notice, objective standards for commitment, the right to a hearing, and the assistance of counsel and an independent expert examiner. *Third, the bill allows the magistrate to order treatment other than hospitalization and promotes the utilization of community mental health resources.*

(Emphasis supplied). Report of the North Dakota Legislative Council (Forty Fifth Legislative Assembly, 1977), p. 197. Senate Bill 2164, after some amendments, became Ch. 239 of the 1977 N.D. Laws and was codified as NDCC Ch. 25–03.1. The Legislature declared that it intended to "[e]ncourage, whenever appropriate, that services be provided within the community." NDCC 25–03.1–01(5). Thus, one basic objective was "treatment other than hospitalization" through community resources. Application of periodic review to continuing outpatient treatment fulfills important objectives of the reform, to encourage local treatment less restrictive than hospitalization while safeguarding individual rights.

As originally enacted in 1977, the periodic review procedure was separately, though awkwardly, stated in NDCC 25–03.1–31 and 25–03.1–32. 1977 N.D. Laws, Ch. 239, §§ 31 and 32. In 1979, however, these two sections were amended and combined into a single section:

> REVIEW OF CURRENT STATUS OF CONTINUING ~~HOSPITALIZATION~~ TREATMENT.) Every individual subject to an order of continuing ~~hospitalization~~ treatment has the right to regular, adequate, and prompt review of his current status as a person requiring treatment and in need of hospitalization. Six months from the date of an order of continuing ~~hospitalization~~ treatment, and every ~~six months~~ year thereafter, the director or superintendent where an individual is hospitalized shall review his status as a person requiring treatment and in need of hospitalization. The results of each periodic review conducted under this chapter shall be made part of the patient's record, and shall be filed within five days of the review, in the form of a written report, with the court ~~which last ordered the patient's hospitalization~~ where the facility is located. Within this five-day period, the director or superintendent shall give notice of the results of

the review to the patient, his attorney and his nearest relative or guardian.

If a periodic review report concludes that the patient continues to require treatment and hospitalization, and the patient objects to either or both of those conclusions, the patient shall have the right to a hearing, an independent evaluation, and may petition the court for discharge. This petition may be presented to the court or a representative of the hospital or facility within seven days, excluding weekends and holidays, after the report is received. If the petition is presented to a representative of hospital or facility, he shall transmit it to the court forthwith. ~~The court shall set a hearing date which shall be within fourteen days of the date of receipt of the petition.~~ The petition shall be accompanied by a report from a physician, psychiatrist, or clinical psychologist setting forth the reasons for his or her conclusions that the patient no longer is a person requiring treatment or in need of hospitalization. If no such report accompanies the petition because the patient is indigent or is unable for reasons satisfactory to the court to procure such a report, the court shall appoint an independent expert examiner to examine the patient, and the examiner shall furnish a report to the court.

If such report concludes that the patient continues to be a person requiring treatment and in need of hospitalization, the court shall so notify the patient and shall dismiss the petition for discharge. If the conclusion is to the contrary, the court shall set a hearing date which shall be within fourteen days of receipt of the examiner's report. At the hearing, the burden of proof shall be the same as in an involuntary treatment hearing.

1979 N.D. Laws, Ch. 334, § 29. The concluding five sentences (underlined material) of this amended and combined section were taken—with only slight changes of phrasing—from NDCC 25–03.1–32 (1977), which was then repealed. 1979 N.D. Laws, Ch. 334, § 33. Substitution of the word "treatment" for "hospitalization" in the first paragraph of that revised section evinces an intention to apply periodic review to an order for continuing outpatient treatment, as well as one for hospitalization.

Moreover, as enacted and as amended, NDCC 25–03.1–31 directs that an involuntary patient's petition for discharge from a continuing treatment order "may be presented to the court or a representative of the hospital or *facility.*" (Our emphasis). As enacted in 1977, the definition of "facility" included any "evaluation and treatment facility which can provide directly, or by direct arrangement with other public or private agencies ... outpatient care...." 1977 N.D. Laws, Ch. 239, § 1, subsection 17. This same definition was reenacted in 1979. 1979 N.D. Laws, Ch. 334, § 4, subsection 16. This part of the definition of a "facility" is the same today. NDCC 25–03.1–02(17) (1991). The intention to make continuation of an alternative treatment order for outpatient care subject to periodic review is unmistakable.

This conclusion is reinforced by an amendment a decade later. In 1989, the definition of a "person requiring treatment" was modified to describe one who needs to be "treated" rather than "hospitalized":

10. "Person requiring treatment" means ~~either~~ a person~~.~~

a. ~~Who is suffering from severe mental illness, severe alcoholism or severe drug addiction. "Severe" means that the disease or addiction is associated with gross impairment of the person's level of adaptive functioning as outlined by axis V of the diagnostic and statistical manual of mental disorders of the American psychiatric association or~~

b. ~~Who~~ who is mentally ill, ~~an alcoholic,~~ or ~~drug addict~~ chemically dependent, and there is a reasonable expectation that if the person is not ~~hospitalized~~ treated there exists a serious risk of harm to ~~himself~~ that person, others, or property. "Serious risk of harm" means a substantial likelihood of:

\*　　\*　　\*　　\*　　\*　　\*

1989 N.D. Laws, Ch. 149, § 3; NDCC 25–03.1–02(10) (1991). Sharon Gallagher, who had been staff counsel to the 1975–1977 interim committee for the original reform, and who, in 1989, was representing the North Dakota Mental Health Association as chair of a task force proposing amendments to NDCC Ch. 25–03.1, explained the reason for this change:

> The other significant change is that, in the past, when we define a person requiring treatment, they always talk about the need for hospitalization and even 12 years ago when the bill was drafted, the intent was not to emphasize the hospital, but to instead use the hospital as a last resort. Using community resources first was always the intent and yet by that one misplaced word in the definition of the criteria, alternative community resources have not been utilized because some judges who read it so strictly and even though the law later said that after determining the need for treatment and the appropriate place for treatment can often be other than hospitalization. The word "treatment" is far more important than "hospitalization."

Minutes of House Judiciary Committee, March 8, 1989, page 3. There may remain other misplaced "hospitalizations" in NDCC Ch. 25–03.1, even in NDCC 25–03.1–31. Nevertheless, this refined definition of a "person requiring treatment" effectively applies all relevant procedures, including a periodic review, to any involuntary treatment, not just hospitalization, unless the context otherwise dictates.

We agree with the trial court that NDCC 25–03.1–31 contemplates periodic review for a continuing order of outpatient treatment, as well as for a continuing order of hospitalization. We conclude that the trial court properly denied T.J.'s motion to dismiss and properly continued the order for outpatient treatment.

Therefore, we affirm.

ERICKSTAD, C.J., VANDE WALLE and LEVINE, JJ., concur.

VERNON R. PEDERSON, Surrogate Justice, sitting as a member of the Court to fill the vacancy created by the resignation of GIERKE, J. JOHNSON, J., not being a member of this Court at the time this case was heard did not participate in this decision.