**In the Interest of T.H., Respondent and Appellant.**

**Civ. Nos. 910398, 910410.**

Supreme Court of North Dakota.

March 23, 1992.

Gregory Ian Runge (argued), Bismarck, for respondent and appellant.

John J. Fox (argued), Asst. Atty. Gen., and Bruce B. Haskell·(argued), Asst. States Atty., Bismarck, for appellee.

MESCHKE, Justice.

T.H. appeals an order of the Burleigh County court that continued his outpatient treatment for mental illness after a periodic review. T.H. also appeals a series of preceding orders by the Stutsman County court, issued annually upon periodic reviews from 1984 to 1989, that continued his hospitalization for mental illness into 1990. T.H. urges that all of these orders should be set aside for "substantial procedural defects" that continue to improperly restrain his liberty. We dismiss the appeals from the Stutsman County orders as untimely, hold that the Burleigh County court properly explained its reasons for not holding an evidentiary hearing for the current periodic review, and remand for an evidentiary hearing to redress procedural deprivations during past periodic reviews.

When he was seventeen, T.H. became abusive to his mother, threatening, and unmanageable. As a result, in 1982 the Burleigh County Juvenile Court adjudicated T.H. an unruly child in need of treatment and rehabilitation, and placed him at the North Dakota State Industrial School. Within a week, the Director of Institutions transferred T.H. to the North Dakota State Hospital for treatment of alcohol and drug addiction.

At first, T.H. was treated at the Hospital under the order of the Juvenile Court. (Since 1979, the juvenile court has had concurrent jurisdiction to treat or commit a mentally ill child "otherwise subject to the jurisdiction of the juvenile court." NDCC 27–20–04 (1991).) Then, in September 1983, the Hospital petitioned the Burleigh County court to involuntarily commit T.H. for treatment of mental illness. T.H. was notified and was furnished the assistance of counsel. After the hearing, the Burleigh County court determined that T.H. was severely mentally ill, and that hospitalization was necessary to prevent harm to himself and others. *See* NDCC 25-03.1-20, 25-03.1-21, and 25-03.1-22. On October 12, 1983, the Burleigh County court ordered T.H. involuntarily hospitalized for ninety days for treatment.

Within ninety days, the Hospital petitioned the Stutsman County court to continue T.H.'s hospitalization indefinitely, based on a continuing diagnosis of severe mental illness with an accompanying intractable seizure disorder. *See* NDCC 25-03.1-22(2). On January 4, 1984, after a hearing with appointed counsel assisting T.H., the court ordered T.H.'s hospitalization for treatment continued indefinitely.

The superintendent of the Hospital filed a periodic review with the Stutsman County court in June, 1984 with an accompanying report of examination, concluding that T.H. continued to be mentally ill and a drug addict, and that he continued to require hospitalization because he was "organically impaired with seizure activity who can not at this time take care of his basic needs." T.H. petitioned for discharge. *See* NDCC 25-03.1-31.[1] The court appointed an inde-

---

1. NDCC 25-03.1-31 says:

   *Review of current status of continuing treatment.* Every individual subject to an order of continuing treatment has the right to regular, adequate, and prompt review of his current status as a person requiring treatment and in need of hospitalization. Six months from the date of an order of continuing treatment, and every year thereafter, the director or superintendent where an individual is hospitalized shall review his status as a person requiring treatment and in need of hospitalization. The results of each periodic review conducted under this chapter must be made part of the patient's record, and must be filed within five days of the review, in the form of a written report, with the court where the facility is located. Within this five-day period, the director or superintendent shall give notice of the results of the review to the patient, his attorney, and his nearest relative or guardian.

   If a periodic review report concludes that the patient continues to require treatment and hospitalization, and the patient objects to either or both of those conclusions, the patient shall have the right to a hearing, an independent evaluation, and may petition the court for discharge. This petition may be presented to the court or a representative of the hospital or facility within seven days, excluding weekends and holidays, after the report is received. If the petition is presented to a representative

pendent expert to examine T.H.'s need for continued treatment. Richard J. Moser, a clinical psychologist, reported that T.H. was mentally ill and an alcoholic, diagnosed an organic personality disorder with poor social judgment and impulse control, memory impairment, and seizure activity, and concluded that T.H. needed hospitalization because he was a danger to himself and others. Based on that independent report, the court dismissed the petition for discharge without an evidentiary hearing and continued the treatment order.

From 1985 to 1990, the Hospital annually filed a periodic review and report of examination for T.H. with the Stutsman County court. Each concluded that T.H. continued to be severely mentally ill, chemically dependent, and in need of hospitalization. T.H. objected to the reviews in 1985, 1987, 1988, and 1989 by petitioning for discharge. Each year except 1987, the court appointed Robert Gulkin, a clinical psychologist, to examine T.H.'s mental health and need for treatment. (Unaccountably, T.H.'s petition for discharge in 1987 was not acted upon.) Each year, Gulkin reported to the court that T.H. continued to be mentally ill and to need hospitalization. Each year through 1989, the court, based on the independent report and without an evidentiary hearing, dismissed T.H.'s petition for discharge and continued T.H.'s hospitalization.

In 1990, an alternate placement was reported available for T.H. after the periodic review was filed and before action on T.H.'s petition for discharge. With the assistance of appointed counsel, T.H. waived a hearing and consented to transfer to the West Central Human Service Center at Bismarck for outpatient treatment while residing in a group home.

In June of 1991, the Center filed a periodic review with the Burleigh County court, reporting that T.H. remained mentally ill and in need of outpatient treatment through monitoring of his medication by the group home staff. T.H. again petitioned for discharge from treatment. The court appointed Dr. Thakor as an independent expert.

Before Dr. Thakor reported, T.H. moved the Burleigh County court to set aside the indefinite treatment order that had been made and continued by the Stutsman County court since 1984. T.H.'s motion was based on claims of procedural omissions in those preceding continuations of his involuntary treatment, including lack of notice of the results of each review to his attorney, lack of representation by an attorney, lack of an evidentiary hearing upon each petition for discharge, and lack of notice of his right to appeal each denial of discharge.

T.H. supported his motion with an affidavit stating that he had not been "advised of my right to legal counsel at anytime before or after the periodic reviews" from 1984 to 1990; that no legal counsel had been appointed for him for those periodic reviews; that he had not been "advised of my statutory right to a hearing if I objected to the conclusions of the periodic reviews;" that he was "not given a hearing to object to the conclusions of any of the periodic reviews;" that each petition for discharge had been "dismissed without my rightful hearing;" and that the "Stutsman County court did not advise me of my right to appeal the court's adverse decisions ... [on] my petitions for discharge." In addition, the attorney, who had represented T.H. at the 1983 hearing for indefinite commitment, stated by affidavit that he had

---

of the hospital or facility, he shall transmit it to the court forthwith. The petition must be accompanied by a report from a physician, psychiatrist, or clinical psychologist setting forth the reasons for his or her conclusions that the patient no longer is a person requiring treatment or in need of hospitalization. If no such report accompanies the petition because the patient is indigent or is unable for reasons satisfactory to the court to procure such a report, the court shall appoint an independent expert examiner to examine the pa-

tient, and the examiner shall furnish a report to the court.

If such report concludes that the patient continues to be a person requiring treatment and in need of hospitalization, the court shall so notify the patient and shall dismiss the petition for discharge. If the conclusion is to the contrary, the court shall set a hearing date which must be within fourteen days of receipt of the examiner's report. At the hearing, the burden of proof is the same as in an involuntary treatment hearing.

not been "notified of any of [T.H.'s] periodic reviews until August of 1990."

On September 25, 1991, Dr. Thakor finally reported to the Burleigh County court that T.H. was mentally ill and chemically dependent. Dr. Thakor stated that T.H. did not need hospitalization, but did need treatment through the Center and the group home because "he needs more supervision and support in managing his [anticonvulsant] medication[s]," and because he has "temper outbursts, difficulty in interpersonal difficulties [sic] which require medication."

The Burleigh County court refused to act on T.H.'s motion to dismiss the preceding continuations of the treatment order by the Stutsman County court because "I do not believe this Court has jurisdiction to review earlier decisions made in Stutsman County Court...." The court refused to schedule an evidentiary hearing because it found "nothing wrong with the procedure utilized by West Central Human Service Center in their [1991] periodic review process." The court concluded that T.H. "has been afforded an opportunity for hearing here in Burleigh County, as well as being advised of his other rights." T.H.'s petition for discharge was thus denied, and his treatment order was continued.

T.H. appeals the Burleigh County court's denial of an evidentiary hearing on his petition for discharge. T.H. also appeals each of the Stutsman County court's orders from 1984 through 1989 that denied his periodic petitions for discharge without an evidentiary hearing, and that thus continued his hospitalization. These multiple appeals of past continuations are premised on *In Interest of A.O.*, 443 N.W.2d 624 (N.D. 1989), holding that the trial court's failure to notify an involuntary patient of the right to appeal from a reviewable mental-health order effectively extends the time for appeal.

T.H. assembles many procedural omissions in the past continuations but he mainly argues that the omission of an evidentiary hearing by the Burleigh County court in 1991 is a mistake common to all of the continuations. T.H. argues that an eviden-

tiary hearing is mandated by the direction in NDCC 25–03.1–31 that, "[i]f a periodic review report concludes that the patient continues to require treatment and hospitalization, and the patient objects to either or both of those conclusions, *the patient shall have the right to a hearing....*" (Emphasis supplied).

On the central question of a right to a hearing on demand, we conclude that T.H.'s interpretation is incorrect. The statute provides an opportunity for an evidentiary hearing during a periodic review, but one is not compelled unless there is a genuine factual dispute about whether the involuntary patient continues to need treatment for his mental illness. Still, to redress past procedural deprivations in the continuations of the present treatment order, we remand with directions for an evidentiary hearing.

## I. APPEALS OF PAST ORDERS

Despite repeated procedural omissions in the periodic continuations of T.H.'s hospitalization in Stutsman County, the State argues that appeals of those orders are untimely and unreasonable. We agree.

■ The right to appeal is an important aspect of mental-health procedures. *In Interest of A.O.* An involuntary patient has the right to an expedited appeal from a mental-health order, including one denying a petition for discharge. NDCC 25–03.1–29. *See also In Interest of C.W.*, 453 N.W.2d 806 (N.D.1990). Unlike other civil appeals, where the time for appeal runs from the date of the service of notice of entry of the judgment or order appealed, [N.D.R.App.P. 4(a)], the time for a mental-health appeal is thirty days after *entry* of the order. NDCC 25–03.1–29; N.D.R.App.P. 2.1(a). But yet, the trial court's failure to notify an involuntary patient of the right to appeal and of the right to counsel for the appeal, as directed by NDCC 25–03.1–29, extends the time for appeal of a mental-health order. *A.O.*, 443 N.W.2d at 625. Because the trial court did not notify T.H. about his right to appeal each continuation order from 1984 through 1989, nor about his right to counsel for

each appeal, his time to appeal each order was extended.

■ Still, the extension in *A.O.* was a few days. The extensions sought here vary from two years to seven years. The question here, then, is how long do these repeated failures, to notify T.H. of his rights for the appeals, extend the separate times to appeal?

On September 11, 1991, T.H.'s present counsel moved the Burleigh County court to set aside the continuations of his treatment order from 1984 to 1990 for reasons that included the repeated failures to notify T.H. about his rights for the appeals. T.H. did not appeal those past continuations until after the Burleigh County court properly ruled that it had no jurisdiction to review Stutsman County orders. Although T.H., through counsel, knew of those past procedural omissions on September 11, 1991, T.H. did not appeal those past orders until seventy-five days later on November 25, 1991. This was more than thirty days after record knowledge of the right to appeal, and was thus too late.

We pointed out in *A.O.* that, notwithstanding the lack of a relevant notice, where the required knowledge of appealability of a civil order or judgment was clearly shown on the record, the time for appeal runs from that knowledge, not indefinitely. *A.O.*, 443 N.W.2d at 625. *See also Morley v. Morley*, 440 N.W.2d 493 (N.D.1989); *Lang v. Bank of North Dakota*, 377 N.W.2d 575 (N.D.1985). Here, too, we conclude that the times for appeal were not extended indefinitely by the court's failure to notify T.H. of his rights for those appeals, but only for the statutory period after the time that the record clearly shows that his counsel acquired knowledge of the lingering rights to appeal.

The designated thirty-day time for each appeal expired before these notices of appeal were filed. Therefore, we dismiss the untimely appeals of the Stutsman County continuations of T.H.'s hospitalization.

## II. ADEQUACY OF FINDINGS

T.H. complains that the Burleigh County court did not make findings of facts nor state conclusions of law in deciding to dismiss his petition for discharge. According to T.H., the court "merely mentioned that the independent expert's evaluation concurred with the recommendations of the periodic review" and "found nothing wrong with the procedure utilized to review [T.H.]'s mental status, implying that it agreed with the doctor's as well as West Central's review reports." T.H. argues that these statements did not obey NDRCivP 52(a), commanding that, "[i]n all actions tried upon the facts ..., the court shall find the facts specially and state separately its conclusions of law thereon...." We reject this argument.

■ Special statutory proceedings, like this Mental Health Act, "whether or not listed in Table A, are excepted from these rules insofar as they are inconsistent or in conflict with the procedure and practice provided by these rules." NDRCivP 81(a). Our civil procedures supplement, rather than supplant, the particularized procedures of the mental-health statutes. Neither the rules nor the statutes command that findings and conclusions be stated for the summary dismissal of an unsupported petition for discharge.

When an independent examiner reports that the involuntary patient continues to need treatment, thus concurring with the corresponding report of the facility's examiner, usually there is no factual dispute to decide under NDCC 25–03.1–31. This section directs the court to then "dismiss the petition for discharge." Hence, there is no need for a trial court to find the facts specially and state separately its conclusions in order to summarily deny a discharge.

In this respect, the statutory procedure parallels the civil procedure. When there is no genuine dispute as to any material fact, summary disposition is a matter of law, not a matter of fact. NDRCivP 56(c). No findings of fact are required for a summary judgment. *Federal Land Bank of Saint Paul v. Halverson*, 392 N.W.2d 77, 82 (N.D.1986). Indeed, the making of findings for summary disposition implies dis-

puted facts that would compel a trial or hearing. *Batla v. North Dakota State University*, 370 N.W.2d 554, 558 (N.D. 1985). When the reason for denial of a petition for discharge is undisputed, that is, when there is no evidence to indicate that the involuntary patient may no longer be a "person requiring treatment," there is no reason for the trial court to repeat the experts' reasons in order to act.

Generally, findings of fact and conclusions of law are unnecessary when a trial court decides a motion. NDRCivP 52(a). Yet, findings are necessary when conflicting evidence must be resolved to act on a motion. *Coulter v. Coulter*, 328 N.W.2d 232, 237 (N.D.1982). Also, when different theories are argued to the trial court on a motion, the trial court should briefly explain the law applied for the decision. *Halverson*, 392 N.W.2d at 82. When, upon a periodic review, an involuntary patient cannot make some showing that he no longer needs treatment, a trial court need not make factual findings to act. Here, the Burleigh County court satisfactorily explained why it refused T.H.'s arguments, denied an evidentiary hearing, and continued outpatient treatment.

## III. AN EVIDENTIARY HEARING

■ T.H. insists that he has a right to an evidentiary hearing when he objects to a periodic review, and he argues that the court arbitrarily denied him a guaranteed hearing. T.H. cites the first sentence of the second paragraph of NDCC 25–03.1–31 as expressing his "right to a hearing" upon periodic review if he merely "objects" to its conclusions:

> If a periodic review report concludes that the patient continues to require treatment and hospitalization, and the patient objects ..., *the patient shall have the right to a hearing*, an independent evaluation, and may petition the court for discharge.

(Emphasis supplied). The State replies that "[t]he plain language of the statute does not provide for a hearing where the independent examiner also concludes that the person continues to require treatment,"

citing the expression in the last paragraph of NDCC 25–03.1–31:

> If such report [by an independent expert examiner] concludes that the patient continues to be a person requiring treatment and in need of hospitalization, the court shall so notify the patient and *shall dismiss the petition for discharge*. If the conclusion is to the contrary, the court shall set a hearing date....

(Emphasis supplied). T.H. summarizes this clash of views this way:

> You see, the county courts used the last paragraph of section 25–03.1–31 as their basis for denying [T.H.]'s Petitions for Discharge, while [T.H.] depends on the second paragraph to get his hearing before the court. As a result, paragraph 3 cancels out paragraph 2 and [T.H.]'s due process rights get violated.

Whatever other ambiguities lie obscured in this section's mechanics, we conclude that an evidentiary hearing is not contemplated when the reviewing examiners, both the facility's and the patient's, agree, and satisfactorily explain why, the patient still needs treatment.

In 1977 the Legislature broadly reformed the mental-health statutes and enacted NDCC Ch. 25–03.1 to adopt a magistrate system for each commitment; to procedurally safeguard the individual rights of an involuntary patient; and to foster treatment less restrictive than hospitalization through community resources whenever possible. *In the Interest of T.J.*, 482 N.W.2d 850 (N.D.1992). This reform came just a few years after the United States Supreme Court decided *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (Even though the initial treatment was proper, the State cannot constitutionally continue involuntary confinement, if the patient is not dangerous to himself or others.) Thus, an important component of the reform was the direction for periodic reviews of a continuing and indeterminate treatment order.

■ The 1977 Mental–Health Act divided the procedure for periodic reviews between consecutive sections. 1977 N.D.Laws, Ch. 239, §§ 31 and 32, codified in NDCC 25–

03.1–31 and 25–03.1–32. In 1979, these two sections were merged into a single section: (REVIEW OF CURRENT STATUS OF CONTINUING ~~HOSPITALIZATION~~ TREATMENT.) Every individual subject to an order of continuing ~~hospitalization~~ treatment has the right to regular, adequate, and prompt review of his current status as a person requiring treatment and in need of hospitalization. Six months from the date of an order of continuing ~~hospitalization~~ treatment, and every ~~six months~~ year thereafter, the director or superintendent where an individual is hospitalized shall review his status as a person requiring treatment and in need of hospitalization. The results of each periodic review conducted under this chapter shall be made part of the patient's record, and shall be filed within five days of the review, in the form of a written report, with the court ~~which last ordered the patient's hospitalization~~ where the facility is located. Within this five-day period, the director or superintendent shall give notice of the results of the review to the patient, his attorney, and his nearest relative or guardian.

If a periodic review report concludes that the patient continues to require treatment and hospitalization, and the patient objects to either or both of those conclusions, the patient shall have the right to a hearing, an independent evaluation, and may petition the court for discharge. This petition may be presented to the court or a representative of the hospital or facility within seven days, excluding weekends and holidays, after the report is received. If the petition is presented to a representative of the hospital or facility, he shall transmit it to the court forthwith. ~~The court shall set a hearing which shall be within fourteen days of the date of receipt of the petition.~~ The petition shall be accompanied by a report from a physician, psychiatrist, or clinical psychologist setting forth the reasons for his or her conclusions that the patient no longer is a person requiring treatment or in need of hospitalization. If no such report accompanies the petition because the patient is indigent or is unable for reasons satisfactory to the court to procure such a report, the court shall appoint an independent expert examiner to examine the patient, and the examiner shall furnish a report to the court.

If such report concludes that the patient continues to be a person requiring treatment and in need of hospitalization, the court shall so notify the patient and shall dismiss the petition for discharge. If the conclusion is to the contrary, the court shall set a hearing date which shall be within fourteen days of receipt of the examiner's report. At the hearing, the burden of proof shall be the same as in an involuntary treatment hearing.

1979 N.D.Laws, Ch. 334, § 29. (Overstrike indicates deletion; underscore indicates addition.) The addition for the last two paragraphs largely came from the former second section, NDCC 25–03.1–32, which was simultaneously repealed. 1979 N.D.Laws, Ch. 334, § 33. Importantly, this revision deleted the sentence at the end of the original text of NDCC 25–03.1–31 that directed the court to automatically set a hearing within fourteen days whenever a patient petitioned for discharge. The effect of the revision leaves a periodic opportunity for a hearing, but allows the court to dismiss without a hearing when the independent examiner's report satisfactorily agrees with the facility's report that the patient still needs treatment.

Without a factual dispute about whether the patient needs continuing treatment, a court has little to decide. Judges are not experts in mental health.

Although we acknowledge the fallibility of medical and psychiatric diagnosis, *see O'Connor v. Donaldson*, 422 U.S. 563, 584 [95 S.Ct. 2486, 2498, 45 L.Ed.2d 396] (1975) (concurring opinion), we do not accept the notion that the short comings of specialists can always be avoided by shifting the decision from a trained specialist using the traditional tools of medical science to an untrained judge or administrative hearing officer after a judicial-type hearing. Even after a hearing,

the nonspecialist decision maker must make a medical-psychiatric decision. *Parham v. J.R.*, 442 U.S. 584, 609, 99 S.Ct. 2493, 2507–08, 61 L.Ed.2d 101 (1979). Under NDCC 25–03.1–02(5) and (6), only a licensed physician, psychiatrist, or clinical psychologist, (or an addiction counselor for chemical dependency), is authorized to evaluate a patient for involuntary treatment. If required procedures are properly followed, and both the facility's report of examination and the independent examiner's report satisfactorily explain that the patient still needs involuntary treatment, then NDCC 25–03.1–31 does not compel the trial court to hold an evidentiary hearing. If there is a disagreement between the experts, lack of a satisfactory report from one expert, or another reason to think that an involuntary patient may no longer need treatment, then a trial court should hold an evidentiary hearing upon periodic review.

The statute ensures an opportunity for the patient to object to the results of a periodic review. The statute does not require an evidentiary hearing unless there is a reason for one.

A summary decision without an evidentiary trial is not unusual when there is no factual dispute. In civil cases, summary decision is authorized where the affidavits and documents "show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of a law." NDRCivP 56(c). It is not surprising, and it is not a denial of due process, for the Legislature to establish a comparable procedure for the periodic review of continuing mental-health orders. Efficient use of judicial resources through avoidance of unnecessary hearings is a valid reason to do so, so long as the patient's rights are safeguarded by fair procedures, and so long as the judicial appraisal of the review reports is purposeful, and not perfunctory. In this case, two evidentiary hearings were held, with the assistance of a court appointed counsel and of an independent examiner, to begin this continuing order for indefinite treatment in 1983 and 1984. Still, T.H. protests that he needs a hearing today to prove that he is not mentally ill because "all he had then [in 1984] and has now is epilepsy."[2] Indeed,

**2.** T.H. says that epilepsy is not a mental illness, citing the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (3rd ed. Rev.1987), but without identifying any discussion on the subject. Indeed, epilepsy does not seem to be a disorder listed in that standard reference work.

However, medical descriptions of epilepsy cast doubt on T.H.'s position:

Epilepsy is characterized by a persistent tendency to seizures. In most attacks there is impairment of thought, awareness or responsiveness, and there may or may not be convulsive movements or automatisms (nonreflex acts without conscious volition). In attacks in which the disorder remains localized, consciousness may not be impaired. The seizures may be associated with structural disease of the brain or a toxic cause, but more frequently, there is no discoverable, organic brain disease. Some forms of epilepsy appear genetically determined. Epilepsy is not one clearly defined disease. The man who has consumed a fifth of whiskey a day for forty years with resultant brain atrophy; the woman whose brain is irritated by a tumor; the child who blinks his eyes, smacks his lips, and resumes normal activity; and the child who falls to the ground, convulses, bites his tongue, and becomes incontinent do not all suffer from the same disease. They do, however, suffer from one of the manifestations of

epilepsy. They have in common a disturbance of the normal pattern of electrical activity in the brain.

\* \* \* \* \* \*

Epilepsy might be best defined as the persistent liability to occasional seizures. It is not in itself a disease, but rather a symptom of disordered brain function. The ultimate causes are many. In many persons with seizures no cause can be ascertained and epilepsy is then called cryptogenic, whereas when the cause is known the epilepsy is labeled as symptomatic. Such causes include birth injuries, biochemical abnormalities, the administration of toxic substances, degenerative diseases of the nervous system, mechanical causes, vascular disease of the brain, tumors both benign and malignant, abscesses and other inflammatory lesions.

4 Lawyers' Medical Cyclopedia, §§ 32.47 and 32.47a (1989–3rd ed.). *See also Matter of May*, 477 N.W.2d 913, 916 (Min.App.1991) (Affirming involuntary commitment for chemical dependency where "grand mal seizure disorder was caused by chronic use of alcohol, and the effectiveness of medication which prevented the seizures was greatly reduced by alcohol use.") T.H.'s epilepsy, or his symptoms of seizures, does not mean that T.H. is not mentally ill, or not chemically dependent. Only experts can explain the relationship between T.H.'s symp-

the periodic reports about T.H. dwell on his seizure disorder. Still, T.H.'s history of epilepsy, alone, does not compel an evidentiary hearing since the experts have said from the beginning that he is a drug addict, mentally ill, and in need of treatment.

In seeking to set aside this continuing treatment order, T.H. advanced nothing factual to show his seizures were separate from his mental illness or his chemical dependency, or from his need for treatment. His 1991 independent examiner, Dr. Thakor, did not indicate that. T.H. made no factual showing that compelled an evidentiary hearing about his condition, although the trial court would have been free to hold a hearing if it had any doubt about the sufficiency of the reports. We conclude that NDCC 25–03.1–31 did not dictate that the Burleigh County court hold an evidentiary hearing here simply because, without any evidence to contest its conclusions, T.H. objected to the 1991 periodic review.

### IV. PAST PROCEDURAL DEPRIVATIONS

Dismissal of the appeals from the Stutsman County court's denials of T.H.'s discharge does not end our inquiry about past procedural deprivations. While we do not directly review those orders, T.H.'s present involuntary treatment is based on those prior continuations extending his initial commitment. His present treatment order, however less restricted, stems from multiple and repeated procedural deprivations going back eight years.

For those years, the treatment order under review has been in effect without an evidentiary hearing. Meanwhile, T.H. has petitioned for discharge at least five times, although deprived of procedural protections guaranteed by law each time. Although no evidentiary hearing may have been statutorily mandated for each of those periodic reviews, the procedural safeguard of assistance of counsel was mandated but omitted each time.

■ The superintendent of the Hospital failed to notify T.H.'s attorney of the re-

sults of the periodic review each year from 1984 until 1990. That notice is clearly directed by NDCC 25–03.1–31. *See* note 1. While we are told that, recently, the Hospital has begun notifying the attorney of record for other involuntary patients, that belated effort does nothing to redress past deprivations of T.H.'s procedural rights.

■ Moreover, T.H. correctly argues that the mental-health court is required to appoint legal counsel to assist him for each periodic review, for a hearing, if any, and for an appeal, if necessary. NDCC 25–03.1–13, 25–03.1–29, and 25–03.1–31. This was not done for T.H. until 1990. We agree that the Mental Health Act contemplates that counsel be made available to advise and assist an involuntary patient during a periodic review if the patient desires.

■ According to NDCC 25–03.1–31, the superintendent of the treating facility must notify the involuntary patient's attorney "of the results of the review." NDCC 25–03.1–13(1) states: "Every respondent under this chapter is entitled to legal counsel." NDCC 25–03.1–13(4) directs that, "[i]f the respondent is indigent, the court shall order that appointed counsel be compensated from county funds of the county which is the respondent's place of residence in a reasonable amount based upon time and expenses." *See also In Interest of J.B.*, 410 N.W.2d 530 (N.D.1987). ("In accord with the fourteenth amendment of the federal Constitution, North Dakota law provides the right to counsel, at state expense if necessary, in any judicial proceeding concerning a patient's commitment.") Burleigh County took these steps for the periodic review in 1991, but the Stutsman County court completely failed to safeguard T.H.'s right to counsel from 1984 until 1990.

Without the assistance of counsel, even a competent patient would be handicapped in understanding the legal labyrinth of involuntary mental-health procedures. Professor Thomas Lockney spoke to this factor in

toms of seizures, his mental condition, and his

need for treatment.

1975 in his predicate article for the 1977 Mental Health Act:

> Underlying this increase in strict due process scrutiny is an emerging focus on the worth of individuals and of procedures designed for their protection. In 1972 Judge Joseph Schneider observed that the "allegedly mentally ill person who is caught up in the nonvoluntary hospitalization process usually possesses neither the money, the knowledge, nor the initiative to assert his rights unless the state develops the resources to assist him." If the rights guaranteed all citizens under the constitution are different or watered down for allegedly mentally ill persons, that necessarily implies that they are somehow less worthy as human beings to exercise the constitutional rights to which we all assume we are entitled. Viewed in this way, it is incongruous to argue that increasing legal protections for mental patients would "make criminals out of them." Surely they are entitled, at the very least, to the same legal protection as criminals.

Lockney, *Constitutional Problems with Civil Commitment of the Mentally Ill in North Dakota,* 52 North Dakota L.R. 83, 86 (1975). Availability of assistance of counsel to an involuntary patient is an important safeguard during a periodic review.

Without this safeguard, a periodic review may not be meaningful for the involuntary patient, as this lame record of periodic reviews of T.H.'s continuing treatment order implies. Therefore, we conclude that the repeated deprivations of the right to counsel, during past periodic reviews of T.H.'s continuations, compel an evidentiary hearing under NDCC 25–03.1–31, to dispel any doubt about his continued need for treatment. Even if T.H. is unable to develop independent evidence that he is not in need of continued treatment, he may be able to contest the existing evidence under the statutory standards for involuntary treatment.

■ Even though the initial order for treatment was proper, the State cannot constitutionally continue the confinement of a nondangerous individual who is capable of surviving safely in freedom by himself, or with the help of willing and responsible family members or friends. *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). A periodic review requires the same judicial scrutiny as commencement of involuntary treatment. The standards for continuation are the same as for an involuntary treatment to commence.

■ More than mere benefit to the patient from continued treatment must be shown. *See In Interest of R.N.,* 450 N.W.2d 758 (N.D.1990). The experts' explanations must show why continuation is the least restrictive condition necessary for the treatment. *See In Interest of Goodwin,* 366 N.W.2d 809 (N.D.1985). The explanations must show that no less restrictive alternative is appropriate. *See In Interest of R.R.,* 479 N.W.2d 138 (N.D.1992). Conclusive reports, particularly ones with preprinted conclusions checked or underlined without satisfactory explanations, are unacceptable. *See In Interest of Riedel,* 353 N.W.2d 773 (N.D.1984), *See also O'Callaghan v. L.B.,* 447 N.W.2d 326 (N.D.1989). In sum, proof that the patient *requires* continued treatment is necessary.

■ A "person requiring treatment" is one who, without treatment, may be reasonably expected to suffer a serious risk of harm, or to pose a serious risk of harm to self, others, or property. NDCC 25–03.1–02(10). "Serious risk of harm" means a "substantial likelihood" of suicide, serious bodily harm to another, or "substantial deterioration in [the patient's] physical health", in mental health, or by substantial injury, disease, or death to the patient. *Id.* *See In Interest of M.B.,* 467 N.W.2d 902 (N.D.1991). The risk of harm to the patient, to others, or to property must be serious and substantial.

At a periodic review hearing, "the burden of proof is the same as in an involuntary treatment hearing." NDCC 25–03.1–31. Clear and convincing proof is necessary. NDCC 25–03.1–19. Here, an evidentiary hearing will ensure that T.H. is properly continued as an involuntary patient if

he needs it, despite past procedural deprivations.

To redress past deprivations of T.H.'s procedural right to counsel, we direct an evidentiary hearing under NDCC 25–03.1–31 within fourteen days after remand.

ERICKSTAD, C.J., LEVINE and VANDE WALLE, JJ., and JAMES K. O'KEEFE, District Judge, concur.

The Honorable JAMES H. O'KEEFE, District Judge, sitting as a member of the Court to fill the vacancy created by the resignation of Justice H.F. GIERKE III. Justice JOHNSON not being a member of this Court at the time this case was heard did not participate in this decision.