In the Interest of J.S.

Leonardo AREVALO, M.D., Petitioner
and Appellee,

v.

J.S., Respondent and Appellant.

Civ. No. 950076.

Supreme Court of North Dakota.

April 13, 1995.

Gilje & Dalsted, Jamestown, for petitioner and appellee; argued by Kenneth L. Dalsted.

Cynthia G. Schaar–Mecklenberg (argued), Jamestown, for respondent and appellant.

MESCHKE, Justice.

In this expedited appeal, J.S. seeks review of orders for his continuing treatment and forced medication. We affirm the orders, but remand for J.S. to have an opportunity to remedy his improper ejection from the courtroom during the hearing.

J.S. has been a patient at the North Dakota State Hospital in Jamestown since October 6, 1989, when he was charged with criminal terrorizing after he threatened a peace officer, Human Service Center staff at Devils Lake, and a state's attorney. He was diagnosed with schizophrenia, paranoid type, chronic, and was eventually given periodic injections of an anti-psychotic medication, haldol decanoate, after he refused oral medications. J.S. was found unable to assist in his own defense, and was committed to the State Hospital under NDCC 12.1–04–08 for up to three years.

In April 1992, J.S. became aggressive and hit a doctor with a pool cue, breaking the doctor's finger. In October 1992, when his

initial commitment ended, J.S.'s guardian authorized a 45–day voluntary admission for him. In November 1992, the trial court entered a 14–day temporary treatment order, and in December 1992 the trial court ordered J.S.'s treatment to continue for 90 days until March 10, 1993. On March 10, 1993, the trial court extended his treatment for another year. J.S. appealed that order, and we affirmed. *In Interest of J.S.*, 499 N.W.2d 604 (N.D.1993). We explained that J.S.'s psychiatrist, Dr. Leonardo Arevalo, testified "J.S. is delusional, has a propensity for aggressive behavior, and had recently assaulted another patient without provocation." *Id.* at 605. We concluded at 607 that evidence showed "alternative treatment programs would not be adequate to meet J.S.'s treatment needs. Violent, aggressive, and unpredictable behavior constitutes clear and convincing evidence that treatment outside the hospital would not be appropriate."

The trial court entered another one-year treatment order for J.S. on February 23, 1994. On January 3, 1995, the trial court ordered continuation of J.S.'s forced medication. J.S. appealed. *In Interest of J.S.*, 528 N.W.2d 367 (N.D.1995). Summarizing a psychiatrist's testimony that "J.S. would likely regress to the behavior underlying the 1989 criminal terrorizing charge if not treated" and that "there is no less restrictive means of treating J.S. because nothing else reduced the agitation caused by the delusions," *id.* at 368, we affirmed the forced medication order but remanded for the court to specify the exact medication in the order.

On January 20, 1995, the State Hospital petitioned to continue treatment of J.S. and to continue to medicate him with haldol decanoate, because the most recent order for continuing treatment was to expire on February 23, 1995. J.S. was present at the hearing on February 15, 1995, but the trial court ejected him from the hearing and returned him to the State Hospital because of his interruptions and outbursts.

After the hearing, the trial court ordered that J.S. "be hospitalized and treated by the North Dakota State Hospital until February 15, 1996, a period of one year, or until further order of the Court" and that "[t]he North Dakota State Hospital medicate the respondent involuntarily with Haldol Decanoate until May 16, 1995, a period not to exceed ninety days from the date of the hearing on this matter." J.S. appeals these orders.

J.S. argues that he did not knowingly waive his right to be present at the hearing nor did he request to leave, and thus the trial court, by ejecting him from the courtroom, violated his statutory right under NDCC 25–03.1–15 and his constitutional due process right to be present at the hearing. J.S. also argues that the trial court failed to explicitly state in its findings that there was a reasonable expectation that J.S. posed a serious risk of harm to himself and others if not medicated, and that the trial court erroneously relied on J.S.'s past actions to determine a substantial likelihood of harm to J.S. or to others presently exists. We agree J.S.'s rights to be present were compromised, but we reject his other contentions.

■ To balance the competing interests of protecting a mentally ill person and of preserving that person's liberty, our standards of decision require trial courts to use a clear and convincing standard of proof while we use a more probing "clearly erroneous" standard of review. *Matter of Guardianship of Braaten*, 502 N.W.2d 512, 518 (N.D.1993). As we explained in *In Interest of R.N.*, 513 N.W.2d 370, 371 (N.D.1994), "we will affirm an order for involuntary treatment unless it is induced by an erroneous view of the law or if we are firmly convinced it is not supported by clear and convincing evidence."

## I

■ J.S. argues that the trial court erred in finding that his conduct demonstrated a substantial likelihood of harm to himself or others because there were only generalizations about his past conduct, rather than specific, first-hand testimony about each of his past episodes of violence. Of course, past decisions and findings about J.S.'s violent behavior are not res judicata, and by themselves do not condemn a committed person to remain hospitalized for life. Still, past deci-

sions and findings of recurrent violent behavior reflect J.S.'s medical history.

At the hearing, Dr. Arevalo, the only witness to testify, described J.S.'s recent threatening behavior, testified from his history that J.S. is violent when not on medication, and believed that he is capable of escalating his threats to actual violence. Accepting Dr. Arevalo's testimony, the trial court found:

7.

That [J.S.] is threatening to others and doesn't believe that anyone can force him to do anything.

8.

That in 1989, [J.S.] threatened a peace officer, Human Service Center staff at Devils Lake, and a state'[s] attorney. He has broken a doctor's finger in 1993. [J.S.'s] recent assaultive behavior, including threats of force in day-to-day requests and interactions, point he is required to be put in seclusion. [J.S.] refuses to participate in treatment. He has a difficult time socializing with others and tends to isolate himself.

9.

That [J.S.] exhibits behavior described as fighting words. The doctor believes that [J.S.] will go beyond words and resort to physical violence.

The court concluded "that the respondent suffers from schizophrenia, paranoid type, chronic which substantially impairs his capacity to use self-control, judgment and discretion, and that there is a substantial likelihood of harm to himself and others as demonstrated by past actions and threats" and ordered a continuation of treatment for one year.

▆▆▆ Specific evidence about every past episode of violent behavior need not be repeated by eye-witnesses at each hearing in order to prove the substantial likelihood of J.S. harming himself and others, when there is a current expert diagnosis that the uncontrollable violent behavior reflected in his history will recur without medication and treatment. Duplication of all past testimony is not necessary. NDREv 703 tells us why:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

It was not clearly erroneous for the trial court to order continuing treatment for J.S. based on his past record of violent assaultive behavior, coupled with the current and uncontroverted expert opinion that his behavior would revert if the prescribed treatment did not continue.

II

J.S. argues that the trial court failed to explicitly state, in its findings and its separate forced medication order, that there was a reasonable expectation that J.S. posed a serious risk of harm to himself or others if he was not medicated. But technical precision in form is unnecessary when written findings can be identified wherever found.

▆▆▆ In its order for forced medication, the trial court recited:

having heard testimony presented supporting said request; and having considered the record and other available information, hereby determines that prescribed medication is clinically appropriate and necessary to effectively treat the respondent; the patient was offered such medication and refused it; the prescribed medication is the least restrictive form of intervention necessary to meet the treatment needs of the respondent; and the benefits of the medication outweigh the known risks to the patient.

Even though these findings were not specifically located in the separate findings of fact and conclusions of law, they preceded the order for forced medication. A specific finding "that there is a substantial likelihood of harm to himself and others as demonstrated by past actions and threats" was made in the concluding paragraphs of the contemporaneous continuing treatment order, and is therefore implicit in the forced medication order.

We recognize findings of fact wherever they are placed. *Jahner v. Jacob*, 233 N.W.2d 791, 798 (N.D.1975). *Compare In Interest of Gust*, 345 N.W.2d 42, 46 (N.D.1984) ("criticiz[ing] the use of preprinted forms and reemphasiz[ing] the importance of setting out findings of facts specifically"). Even if the best form was not used here, it was not error for the trial court to spread its findings among the conclusions and the contemporaneous orders concluding a single hearing, and the placement of findings does not warrant reversal.

### III

J.S. argues that the trial court violated his statutory and constitutional rights by ejecting him from the courtroom. He argues that his right to be present at the hearing under NDCC 25–03.1–15 and for due process was violated because he did not waive his right to be present nor did he ask to leave.

At the hearing, J.S. interrupted Dr. Arevalo's testimony by repeatedly yelling "eliminate me." Again, during Dr. Arevalo's testimony, J.S. told the judge to "shut up," and the judge warned him that he would be ejected if he continued to interrupt. J.S. shouted "remove me," and the judge abruptly removed J.S. from the courtroom and sent him back to the State Hospital. Since J.S. was removed from the courtroom, he did not testify. His counsel did not object to J.S.'s removal, did not request that he be brought back to testify, and waived her closing arguments.

■ "The respondent must be present at all [involuntary commitment] hearings unless he waives his right to be present either orally or in writing." NDCC 25–03.1–15 (part). *See also In Interest of Gust*, 345 N.W.2d at 45 ("witnesses in an involuntary commitment proceeding[ ] under NDCC Ch. 25–03.1 must be present in court to present oral testimony unless all the principal parties, including the respondent, with the court's approval, agree otherwise"). The United States Supreme Court has held that due process for a commitment hearing, "requires that [the respondent] be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-

examine, and to offer evidence of his own." *Specht v. Patterson*, 386 U.S. 605, 610, 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326 (1967). Thus, statutorily and constitutionally, J.S. had the right to be present and participate at the hearing.

J.S. asserts this right is absolute. He claims that his counsel's failure to object to his removal is overridden by this absolute right. J.S. claims the remedy should be to invalidate the orders and to start the proceedings over again. However, few rights are absolute, and any right needs to be implemented by corresponding acts of counsel and the court.

■ The right of attendance for an involuntary commitment respondent is subject to the power of the court to maintain order in the courtroom. NDREv 611(a) authorizes: "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." It is counsel's duty to protect a respondent's rights. *See* NDREv 103 on "rulings on evidence." Yet, it is the court's duty to guard the due process rights of an involuntary commitment respondent while maintaining decorum. NDREv 103(d): "Nothing in this rule precludes taking notice of errors affecting substantial rights although they were not brought to the attention of the court."

Unfortunately, the trial court did not consider any alternatives to removing J.S. from the hearing, such as a recess or a continuance, in spite of Dr. Arevalo's testimony that J.S.'s disruptive conduct was a result of his mental illness. To further compound J.S.'s situation, his counsel did not object to his removal, waived closing arguments, and failed to take any steps to protect his rights to be present and to testify.

■ J.S. was abruptly sent back to the State Hospital rather than first sent out of the courtroom briefly or into another room to calm down. The removal of a mentally ill person from a treatment hearing is not, con-

trary to appellee's argument, akin to finding a person in contempt of court in a civil or criminal proceeding. In protecting a non-criminal and institutionalized person's rights, it is important that the trial court use patience and composure. A court should not summarily eject a mentally ill person for outbursts and interruptions that might be controlled or decreased by less severe alternatives. On remand, we direct that the trial court reopen the hearing to restore J.S.'s statutory and constitutional rights.

■ Even if the trial court did not sufficiently seek reasonable alternatives to removing J.S., we will not reverse. Reversal is not necessary because any deficiency in procedure can be redressed by supplementing the hearing. *See In Interest of L.L.*, 482 N.W.2d 854 (N.D.1992) (denying dismissal for failure to timely review periodic treatment order, but remedying by remand for prompt hearing instead). *See also In Interest of T.H.*, 482 N.W.2d 615, 626 (N.D.1992) (additional hearing directed "[t]o redress past deprivations" of involuntary patient's procedural rights). "Without a factual dispute about whether the patient needs continuing treatment, a court has little to decide." *Id.* at 622.

■ Here, there has been no evidence to contradict Dr. Arevalo's reiterated testimony that J.S. needs continued treatment. Unless J.S. offers meaningful evidence in the supplemental hearing that he doesn't need treatment, treatment should continue despite prior procedural anomalies.

On remand, J.S. should have an opportunity to testify and to produce other evidence if he requests to do so. After any supplemental hearing, of course, the trial court must make the additional findings necessary to complete the record in light of added evidence, and must amend the conclusions if additional findings make it necessary. Subject to the further hearing, we affirm the orders of the trial court for continuing treatment and for treatment with medication.

VANDE WALLE, C.J., and SANDSTROM and NEUMANN, JJ., concur.

LEVINE, Justice, dissenting.

I agree with all of the majority opinion except the part that seems to apply a hybrid harmless error-plain error rule in order to craft a limited remedy. I think the majority is saying that the respondent had a right to be present, kind of, but the expert evidence makes a different result unlikely had the respondent been present, so respondent's exclusion was not reversible error (*i.e.*, it was harmless error) and, besides, respondent's attorney didn't object to respondent's exclusion [*i.e.*, there was a waiver, but there was also a kind of plain error], so it's not reversible error. But, respondent gets to testify, if he wishes.

I am not sure that the harmless error doctrine is applicable at all to the violation of a respondent's right to be present at his commitment hearing. *Cf. Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). Even if harmless error does apply, I believe the respondent's exclusion was not harmless beyond a reasonable doubt, *see Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Exclusion from one's continuing treatment and forced medication hearing is not qualitatively or quantitatively comparable to a de minimis delay in a continuing treatment hearing, and so the majority's reliance on *In Interest of L.L.*, 482 N.W.2d 854 (N.D.1992), is not convincing. Respondent's exclusion from his hearing is not the procedural "trifle" we addressed in the *L.L.* case, and because respondent's presence at the hearing is a substantial right, counsel's failure to object to it is not a waiver because the exclusion is plain error. *See* Rule 61, NDRCivP. To comport with "substantial justice," a new trial should be held. *Id.*

I respectfully dissent.